

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:23-CV-2077-L** |
| | § | |
| **DAMIEN MORAN; CROWN** | § | **Filed Ex Parte and Under Seal** |
| **BULLION, INC.** (a Texas corporation); | § | |
| **BRIGHT FUTURE FINANCIAL, LLC** | § | _1:23–mc–29. DNH/CFH_ |
| (a Florida limited liability company | § | |
| d/b/a "Oakhurst Metals"); **and** | § | |
| **BRIGHT FUTURE FINANCIAL, LLC** | § | |
| (a California limited liability company | § | |
| d/b/a "Oakhurst Metals"), | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiff's Emergency Ex Parte Motion for Statutory Restraining Order

(Doc. 3), filed September 18, 2023. Pursuant to Section 6c(a) of the Commodity Exchange Act

("CEA"), 7 U.S.C. § 13a-1, and in accordance with Federal Rule of Civil Procedure 65, Plaintiff

Commodity Futures Trading Commission ("CFTC" or "Plaintiff") requests that the court enter an

ex parte statutory restraining order ("SRO") against Damien Moran ("Mr. Moran"); Crown

Bullion, Inc., a Texas corporation; Bright Future Financial, LLC, a Florida limited liability

company d/b/a "Oakhurst Metals"; and Bright Future Financial, LLC, a California limited liability

company d/b/a "Oakhurst Metals" that: (1) freezes Defendants' assets, (2) gives the CFTC

immediate access to the books, records, and other documents of Defendants and the authority to

inspect and copy such records; (3) appoints a temporary receiver; and (4) authorizes expedited

discovery in advance of a preliminary injunction hearing.  For the reasons herein explained, the

**Memorandum Opinion and Order–Page 1**

CFTC's Motion is **granted in part and denied in part** *to the extent set forth in this memorandum opinion and order.*

## I.   Background

The CFTC brought this action on September 18, 2023, alleging that Defendants violated the CEA, 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) as follows:

> Defendant Damien Moran, individually, and Bright Future Florida, Bright Future California, and Crown Bullion operating together as a common enterprise, intentionally or recklessly, in connection with contracts of sale of commodities in interstate commerce,
>
> > Used or employed, or attempted to use or employ, a scheme or artifice to defraud;
> >
> > Made, or attempted to make untrue or misleading statements of material fact, or omitted to state material facts necessary to make the statements made not untrue or misleading; and/or
> >
> > Engaged in, or attempted to engage in, acts, practices, or a course of business that operated or would operate as a fraud or deceit on Defendants' customers.

Pl.'s Compl. ¶ 64.  According to the CFTC's Complaint:

1. Defendants are defrauding victims in this district and throughout the country out of hard-earned retirement savings, stealing funds for what they deceptively pitch as a safe and secure way to invest their retirement savings in precious metals. From at least March 2018 and continuing through the present ("Relevant Period"), Defendants Damien Moran and the companies he controls or controlled, Crown Bullion Inc. (a Texas corporation), Bright Future Financial, LLC (a Florida limited liability company), and Bright Future Financial LLC (a California limited liability company) have engaged in, and continue to engage in, a scheme to defraud investors throughout the United States. During the Relevant Period, Defendants received more than $7 million from over 100 mostly elderly and retirement-aged victims for the purpose of purchasing metal, and instead or procuring the promised metals, Defendants misappropriated most of those funds.

2. Defendants have targeted a vulnerable population of mostly elderly or retirement-aged persons with little or no experience in precious metals investments. During the Relevant Period, Defendants pitched victims on the prospect of securing their retirement by purchasing gold and silver through "Bright Future Financial,"

"Oakhurst Metals" and "Crown Bullion" in self-directed individual retirement accounts ("self-directed IRAs"). They continue to do so through Crown Bullion.

3. Defendants have misappropriated the majority of funds they received from victims, often fabricating invoices for metals transactions that did not occur. Defendants transferred only about $1.8 million to precious metals suppliers out the approximately $7 million received from victims for the purpose of purchasing precious metals. Even when Defendants purchased metals for customers, they often did so at outrageously inflated prices, or fraudulently purchased less or different types of metals than agreed upon with their customers.

4. Defendant Damien Moran has sought to evade detection and perpetuate the scheme by, among other things, using fake names such as "Michael Gavyn" when soliciting customers, and changing the business names and locations he uses to operate this fraudulent scheme. Defendants have also created and issued phony account statements, concocted explanations for missing metals or supposed "delays" in precious metals deliveries, and lied to victims about every aspect of their investments in face-to-face meetings, phone calls or emails.

Pl.'s Compl. ¶ 1-4.  The CFTC further alleges that, to avoid detection, Defendants have "shifted the banks through which they receive funds during the course of their scheme," and "[i]n their more than five years of operation, Defendants have opened multiple bank accounts on behalf of the Entity Defendants and three banks." *Id.* ¶ 54.  In addition to the allegations in its Complaint, the CFTC relies on declarations of victims and CFTC investigators. The CFTC's counsel also submitted a sworn certification in support of the request for ex parte relief.

## II.    Injunctive Relief

The CEA authorizes the CFTC to bring a civil action to obtain a "a permanent or temporary injunction or restraining order . . . without bond" against any person or entity whenever it appears that such person or entity "has engaged, is engaging, or is about to engage in any act or practice constituting a violation of" any provision of the CEA or CFTC regulations. 7 U.S.C. § 13a-1. The CFTC may bring such an action "to enjoin such act or practice, or to enforce compliance with" the CEA or CFTC regulations:

> *Provided*, That no restraining order (other than a restraining order which prohibits any person from destroying, altering or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records or other documents or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property, and other than an order appointing a temporary receiver to administer such restraining order and to perform such other duties as the court may consider appropriate) or injunction for violation of the provisions of this chapter shall be issued ex parte by said court.

*Id.*   When the CFTC seeks a statutory injunction, it "need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits. A prima facie case of illegality is sufficient." *Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978).

The CFTC has sufficiently alleged in its Complaint and shown by evidence, including the declarations from victims and CFTC investigators, that Defendants have systematically violated the CEA and have continued to engage in a fraudulent scheme over a period of several years involving the purported sale of precious metals to defraud unsuspecting investors out of their retirement savings.   It is not clear to the court whether Federal Rule of Civil Procedure 65(b)[*] applies to requests for injunctive relief under U.S.C. § 13a-1, given that a showing of irreparable injury is not required for relief under section 13a-1. *Muller*, 570 F.2d at 1300.   As noted, counsel for the CFTC, however, has submitted a sworn certification in which he states that providing advance notice to Defendants of Plaintiff's request for an ex parte SRO would pose a substantial

---

[*] Federal Rule of Civil Procedure 65(b)(1) allows for issuance of an *ex parte* TRO without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B).

**Memorandum Opinion and Order–Page 4**

and likely threat that they would dissipate or misappropriate any remaining funds in their possession, thereby depriving the victims of their scheme of any potential restitution, because Defendants have previously moved funds to various vendors and financial institutions, and they have changed the names of firms and websites that they use in perpetrating their fraudulent scheme to avoid detection. Accordingly, the court determines that issuance of an ex parte temporary SRO is appropriate; however, because the SRO is temporary in nature, it will be limited to matters necessary to maintain the status quo until there has been a determination regarding Defendants' liability for the alleged CEA violations.

### III.    Appointment of a Temporary Receiver

The CFTC asserts that *Securities & Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir. 1981) ("First Financial"), sets forth the appropriate standard for appointment of a temporary receiver in cases involving alleged violations of the CEA when an injunction is sought concurrently with such appointment. In *First Financial*, the court explained that "under the relevant *securities laws*, preliminary injunctive relief is appropriate upon a showing of "a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the *federal securities laws*." *S.E.C. v. Barton*, __ F.4th__, 2023 WL 5618997, at *3 (5th Cir. Aug. 31, 2023) (emphasis added) (quoting *First Fin. Grp.*, 645 F.2d at 434). The court was unable to find any authority applying this standard for appointment of receivers to cases involving the CEA. Courts, however, "have looked to securities laws when called upon to interpret similar provisions of the CEA" that apply to commodities. *Commodity Futures Trading Comm'n v. Gorman*, No. 21 CIV. 870 (VM), 2023 WL 2632111, at *4-5 n.5 (S.D.N.Y. Mar. 24, 2023) (quoting *Loginovskaya v. Batratchenko*, 764 F.3d 266, 272 (2d Cir. 2014)).

Regardless, section 13a-1 provides for appointment of a receiver "to administer such restraining order and to perform such other duties as the court may consider appropriate," 7 U.S.C. § 13a-1, and the court determines that the temporary appointment of a receiver here is necessary to maintain the status quo to protect defrauded investors by prohibiting or preventing Defendants from "destroying, altering or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records or other documents or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property," and no less drastic remedy is available to accomplish this. 7 U.S.C. § 13a-1.

On the other hand, the court does not believe that it is necessary at this time, *before there has been a finding as to Defendants' liability*, for any temporary receiver to participate in new actions "to increase the value" of any receivership assets; to "investigate and determine victims' claims"; determine unlawful proceeds retained by Defendants and amounts due to victims as a result of Defendants' alleged violations"; or to "distribute funds to victims harmed" as indicated in Plaintiff's proposed order. The focus, instead, should be on maintaining the status quo and preservation of any receivership assets as set forth in § 13a-1. The court, therefore, will revise Plaintiff's proposed order accordingly to limit the role of a temporary receiver to maintaining the status quo pending any determination regarding Defendants' liability for the alleged CEA violations.

## IV.   Expedited Discovery

Plaintiff requests expedited discovery, pursuant to Federal Rule of Civil Procedure 26(d), in advance of a preliminary injunction hearing. Plaintiff asserts that expedited discovery:

> is necessary and appropriate to locate and secure Defendants' and investors' funds, and further investigate the extent of Defendants fraudulent scheme. More

Memorandum Opinion and Order–Page 6

specifically, Plaintiff seek[s] the ability to take depositions of parties and non-parties subject to two calendar days' notice pursuant to Fed. R. Civ. P. 30(a) and 45, with notice given personally, by facsimile or by electronic mail, and, if necessary, the deposition may last more than seven hours. Such expedited discovery will allow the Plaintiff to determine the full extent of Defendants' wrongdoing (including, but not limited to, the possible involvement of others), locate other investors, identify Defendants' funds, assets and other property, and clarify the sources of funds, assets, and other property in advance of a preliminary injunction upon the expiration of the Proposed SRO.

Pl.'s Mot. Br. 22.

A party generally may not seek discovery prior to the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). The Fifth Circuit has not identified a standard for determining whether discovery should be expedited.  A number of federal district courts, however, have adopted a good cause standard. *See Cook v. City of Dallas*, 2012 WL 13191445, at \*2 (N.D. Tex. Nov. 9, 2012) (citing *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 239 (S.D. Tex. 2011) (citing cases)). To determine whether good cause exists, courts consider the following factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *St. Louis Grp*., 275 F.R.D. at 239 n.4 (citations omitted).  The party seeking the accelerated discovery has the burden to show good cause exists. *Id.* at 240.  Requests for expedited discovery are generally denied unless they are "narrowly tailored in scope." *Id.*

While a pending preliminary injunction application can in appropriate circumstances "provide a basis for good cause, it does not constitute *per se* good cause." *Northstar Offshore Ventures, LLC v. Tana Expl. Co. LLC*, No. 3:18-CV-2025-N, 2018 WL 3970616, at \*7 (N.D. Tex. Aug. 20, 2018) (citing *Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc*., No. 98-CV-2782, 1998 WL 404820, at \*1-2 (E.D. Pa. July 15, 1998) (denying a motion for expedited

**Memorandum Opinion and Order–Page 7**

discovery despite a pending preliminary injunction hearing because the movant's requests were overly broad)). Courts, however, "have granted expedited discovery requests when there is some showing of irreparable harm that can be addressed by limited, expedited discovery." *St. Louis Grp.*, 275 F.R.D. at 240-41.  In *St. Louis Group*, the district court identified the following cases in which courts determined that expedited discovery was appropriate on this basis:

> *See, e.g., JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F. Supp. 2d 278, 282-83 (S.D.N.Y.2009) (granting expedited discovery to plaintiffs to determine the location of missing art pledged as collateral for $50 million promissory note); *Monsanto* [*Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008)] (allowing limited discovery to minimize the risk of loss or destruction of the physical evidence of infringement); *Stern v. Cosby*, 246 F.R.D. 453, 457-57 (S.D.N.Y. 2007) (allowing expedited discovery to determine whether defendant was interfering with fact witnesses and attempting to obstruct justice in that case); Ayyash [*v. Bank Al–Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (allowing expedited discovery on third-parties to locate assets in the United States relating to foreign defendants who had the incentive to hide those assets); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing limited discovery in infringement action where bean plant variety at issue is a commodity subject to sale and consumption and might not be available for inspection at a later date); *McMann v. Doe*, 460 F. Supp. 2d 259, 265-66 (D. Mass. 2006) (allowing expedited discovery on basis that showing of irreparable harm had been made because plaintiff could receive no remedy without knowing defendant John Doe's true name).

*St. Louis Grp.*, 275 F.R.D. at 240-41.

Some of the matters for which Plaintiff seeks discovery do not appear to be probative of the issues that will need to be addressed at a preliminary injunction hearing—Plaintiff's stated reason for needing expedited discovery.  Discovery regarding the "full extent of Defendants' wrongdoing" and "further investigat[ion]" regarding "the extent of Defendants' fraudulent scheme" is not necessary for this purpose and can be handled through the normal discovery process. Based on the reasoning in the cases discussed above, however, the court will permit Plaintiff to conduct limit expedited discovery in the form of a deposition for purposes of identifying the location of Defendants' assets. The court has concern regarding the CFTC's request to provide Defendants

with only two-days' notice of a deposition. Accordingly, any notice provided to Defendants must be given at least **four days** in advance of a deposition, which must not exceed **seven hours** in length. Plaintiff's request for expedited discovery is granted in part and denied in part.

## V.     Conclusion and Temporary Restraining Order

For the reasons stated, the CFTC's Motion is **granted and denied in part**. Specifically, the CFTC's request for an ex parte temporary SRO, appointment of a temporary receiver, and expedited discovery is **granted** *to the extent set forth in this memorandum opinion and order*. Accordingly, the court enters this ex parte temporary SRO and order appointing a temporary receiver as follows ("Order"):

### DEFINITIONS

For purposes of this Order, the following definitions apply:

1.      The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

2.      The term "record" encompasses the terms "document" and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34(a), and includes, but are not limited to, all writings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations–stored in any medium from which information can be obtained or translated, if necessary, into reasonable usable form. The term "record" also refers to each and every such item in Defendants' actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of the Defendants, and (ii) all items which Defendants have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. Records also include the file and folder tabs associated with each original and copy.

3.      The term "Defendants" refers to Damien Moran, Crown Bullion, Inc. (a Texas corporation d/b/a "Kenwood Capital"), Bright Future Financial, LLC (a Florida limited liability company d/b/a "Oakhurst Metals"), and Bright Future Financial, LLC (a California limited liability company d/b/a "Oakhurst Metals").

**Memorandum Opinion and Order–Page 9**

## RELIEF GRANTED

**IT IS ORDERED THAT:**

I.  **Asset Freeze Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets**

4.  Defendants are immediately restrained and enjoined, except as otherwise ordered by this court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located, including Defendants' assets held outside the United States, except as provided otherwise in Sections IV, V, and VI of this Order, or as otherwise ordered by the court;

5.  Notwithstanding the provisions of this Section I, at the request of the Temporary Receiver, Defendants and any other person who has possession, custody, or control of any of Defendants' assets shall transfer possession of all funds, assets or other property subject to this Order to the Temporary Receiver in accordance with Sections IV, V and VI of this Order.

6.  The assets affected by this Order shall include existing assets as well as assets acquired after the effective date of this Order.

II.  **Maintenance of and Access to All Records That Relate to Defendants' Business Activities and Business and Personal Finances**

7.  Defendants are restrained from directly or indirectly destroying, altering, or disposing of, in any manner, any records that relate or refer to the business activities or business or personal finances of Defendants.

8.  Representatives of the CFTC shall be immediately allowed to inspect any records relating or referring to the business activities or business or personal finances of the Defendants including, but not limited to, both hard-copy documents and electronically stored information, wherever they may be situated and whether they are in the possession of the Defendants or others. To ensure preservation and facilitate meaningful inspection and review of records, Defendants shall allow representatives of the CFTC to make copies of any records, and if on-site copying of records is not practicable, representatives of the CFTC may make such copies off-site.  The CFTC shall promptly return the original records after any such off-site copying.

9.  To further facilitate meaningful inspection and review, Defendants shall, absent a valid assertion of their rights against self-incrimination under the Fifth Amendment, promptly provide CFTC staff with:

    a.  the location of all records relating or referring to the business activities and business and personal finances of Defendants; and

**Memorandum Opinion and Order–Page 10**

    b.   all identification numbers and other identifying information for websites, cloud storage services, email and smartphone accounts, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) owned, controlled or operated by Defendants or to which Defendants have access; and

    c.   all passwords to, and the location, make and model of, all computers and/or mobile electronic devices owned and/or used by Defendants in connection with their business activities and business and personal finances.

10.    When inspecting records that are subject to this Order, including those contained on computers and/or other electronic devices, the CFTC should undertake reasonable measures to prevent review of the Defendants' privileged communications and/or other nonbusiness, nonfinancial materials by the CFTC's attorneys and other staff who are part of the litigation team in this matter. Moreover, Defendants (or their counsel) shall promptly contact counsel for the CFTC to assert any claims of privilege (or other legal objections) relating to the contents of any records that are subject to this Order and promptly cooperate with counsel for the CFTC to develop reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other nonbusiness, nonfinancial materials to the CFTC's attorneys and other staff who are part of the litigation team in this matter. Nothing herein, however, shall excuse Defendants from full and immediate compliance with this court's Order permitting the CFTC to inspect the records which relate to Defendants' business activities and their business and personal finances.

### III.   Notice to Financial Institutions and Others that Hold or Control Assets or Records of Defendants

11.    To ensure the effectiveness of the asset freeze and pending further Order of this court, any financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any assets of Defendants shall not, in active concert or participation with Defendants, permit Defendants or other persons to withdraw, transfer, remove, dissipate, or otherwise dispose of any of Defendants' assets, except as directed by further order of the court; and

12.    Any financial or brokerage institution, business entity, or person that receives notice of this Order by personal service or otherwise shall not, in active concert or participation with Defendants directly or indirectly destroy, alter, or dispose of, in any manner, any records relating to the business activities and business and personal finances of Defendants.

13.    Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or assets, titled in the name of, held for the benefit of, or otherwise under the control of Defendants, or has held, controlled, or maintained custody of any such asset, of Defendants at any time since March 2018, shall not, in active concert or participation with Defendants, deny a request by the CFTC to inspect all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets,

**Memorandum Opinion and Order–Page 11**

transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the CFTC.

14.     Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order shall:

a.     Within ten business days of a request by the Temporary Receiver, or such longer period specified by the Temporary Receiver, provide the Temporary Receiver with copies of all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

b.     Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring Defendants' assets, at the Temporary Receiver's direction, and producing Records related to business activities or business or personal finances of Defendants to the Temporary Receiver.

## IV.     Order Appointing Temporary Receiver

15.     **Kelly Crawford** of the firm Scheef & Stone LLP is appointed Temporary Receiver with the full powers of an equity receiver for Defendants, and of all records, and all funds, properties, premises, accounts, income, now or hereafter due or owing to the Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Defendants, (hereinafter, the "Receivership Estate"). The Temporary Receiver shall be the agent of this court in acting as Temporary Receiver under this Order.

16.     The Temporary Receiver is directed and authorized to accomplish the following:

a.     Assume full control of the Receivership Estate by removing Mr. Moran, and any officer, independent contractor, employee, or agent of the Defendants, from control and management of the affairs of the Receivership Estate as the Temporary Receiver deems appropriate;

b.     Take exclusive custody, control, and possession of the Receivership Estate, which includes but is not limited to complete authority to sue for, collect, receive, and take possession of all goods, chattels, rights, credits, money, effects, land, leases, books, records, work papers, and records of accounts, including electronically-stored information, contracts, financial records, funds on hand in banks and other financial institutions, and other papers and records of the Defendants and customers or clients of any of Defendants' business activities whose interests are now held by, or under the direction, possession, custody, or control of, the Defendants;

Memorandum Opinion and Order–Page 12

c. Take exclusive custody, control, and possession of all websites, cloud storage services, email, and smartphone accounts, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) controlled or operated by or to which the Defendants have access in connection with their business activities and business and personal finances;

d. Take all steps necessary to secure the business and other premises under the control of the Defendants;

e. Perform all acts necessary, including the suspension of operations, to conserve, hold, manage, and preserve the value of the Receivership Estate in order to prevent irreparable loss, damage, or injury to investors in any investment opportunity operated by Defendants;

f. Prevent the withdrawal or misapplication of the assets of the Receivership Estate and otherwise protect the interests of investors in any investment opportunity operated by Defendants;

g. Manage and administer the Receivership Estate by performing all acts incidental thereto that the Temporary Receiver deems appropriate, including hiring or dismissing any and all personnel, suspending operations, and/or entering into agreements, including but not limited to: (1) the retention and employment of investigators, attorneys, or accountants, appraisers, and other independent contractors and technical specialists of the Temporary Receiver's choice, including without limitation members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver; and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Defendants;

h. Collect all funds owed to the Defendants;

i. Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve the value of the assets;

j. Issue subpoenas to obtain records pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

k. Open one or more bank accounts and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

l. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Temporary Receiver shall apply to the court for prior approval of any payment of any debt or obligation incurred by the Defendants prior to the date of entry of this Order, except for payments that the Temporary Receiver

deems necessary or advisable to secure the Receivership Estate from immediate and irreparable loss;

m. Maintain written accounts itemizing receipts and expenditures, describing properties held or managed, and naming the depositories holding funds or other assets of the Receivership Estate; make such written accounts and supporting documentation available to the CFTC for inspection; and, within sixty days of being appointed and periodically thereafter, as directed by the court, file with the court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by this Order; and

n. Provide the CFTC with a full accounting of all Defendants' funds, documents, and assets, including those outside of the United States from March 2018 to the date of the Order.

## V.  Transfer of Funds and Records to the Temporary Receiver

17.     Absent a valid assertion by Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants shall, within five business days following the service of this Order:

a. Transfer to the territory of the United States and deliver to possession, custody, and control of the Temporary Receiver, all assets of the Receivership Estate (other than real property) and books and records of the Receivership Estate, located outside of the United States that are held by Defendants, for their benefit, or under their direct or indirect control, whether jointly or singly.

b. Provide the Temporary Receiver access to all records of the Receivership Estate and all assets of the Receivership Estate held by any financial or brokerage institution, business entity, or other person that receives actual notice of this Order by personal service or otherwise, located within or outside the territorial United States by signing any necessary consent forms.

## VI.  Turning Over Assets and Records to the Temporary Receiver

18.     Upon service of this Order, and absent a valid assertion by Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants and any agents, employees, or partners of the Defendants who are served with a copy of this Order, shall immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:

a. Possession and custody of all assets of the Receivership Estate, owned beneficially or otherwise, wherever situated;

b. Possession and custody of all records of the Receivership Estate in connection with their business activities and business and personal finances, including but not limited

to, all records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers); investor lists, title documents, and other records of the Defendants;

c.  Possession and custody of all assets belonging to members of the public now held by the Defendants;

d.  All keys, passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of the Defendants related to their business activities and business and personal finances, including, but not limited to, access to the Defendants' business premises, means of communication, accounts, computer systems, mobile electronic devices, or other property; and

e.  Information identifying the accounts, employees, properties, or other assets or obligations of the Defendants.

## VII.  Directive to Cooperate with Temporary Receiver

19.  Absent a valid assertion of their respective rights against self-incrimination under the Fifth Amendment, Defendants and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Temporary Receiver.  This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority as provided in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Temporary Receiver under this Order, and advising all persons who owe debts to the Defendants that all debts should be paid directly to the Temporary Receiver.

## VIII.  Stay on Actions Against Defendants

**IT IS FURTHER ORDERED THAT:**

20.  Except by leave of the court, during the pendency of the receivership ordered herein, Defendants and all other persons and entities shall be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of the Defendants, the Temporary Receiver, assets of the Receivership Estate, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

a.  Petitioning, or assisting in the filing of a petition, that would cause the Defendants to be placed in bankruptcy;

b.  Commencing, prosecuting, litigating or enforcing any suit or proceeding against any of the Defendants, except that such actions may be filed to toll any applicable statute of limitations;

**Memorandum Opinion and Order–Page 15**

    c. Commencing, prosecuting, continuing, or entering any suit or proceeding in the name or on behalf of any of the Defendants, or any of their subsidiaries or affiliates;

    d. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Defendants, or any property claimed by any of them, or attempting to foreclose, forfeit, alter, or terminate any of the Defendants' interests in property, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

    e. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Defendants or the Temporary Receiver, or any agent of the Temporary Receiver; and

    f. Doing any act or thing to interfere with the Temporary Receiver taking control, possession, or management of the property subject to the Receivership Estate, or to in any way interfere with the Temporary Receiver or to harass or interfere with the duties of the Temporary Receiver, or to interfere in any manner with the exclusive jurisdiction of this [c]ourt over the property and assets of the Defendants.

Provided, however, that nothing in this section shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Defendants.

## IX.    Compensation for Temporary Receiver and Personnel Hired by the Temporary Receiver

    21.    The Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver, are entitled to reasonable compensation, to be paid solely from the assets of the Receivership Estate, for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to benefit the Receivership Estate or (2) necessary to the administration of the estate. The Temporary Receiver and all personnel hired by the Temporary Receiver shall not be compensated or reimbursed by, or otherwise entitled to, any funds from the court, or the CFTC. The Temporary Receiver shall file with the court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order and subsequent requests filed quarterly thereafter. The requests for compensation shall itemize the time and nature of services rendered by the Temporary Receiver and all personnel hired by the Temporary Receiver.

## X.    Persons Bound by This Order

    22.    This Order is binding on any person who receives actual notice of this Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee,

or attorney of Defendants or is in active concert or participation with the Defendants.

### XI.   Bond Not Required of Plaintiffs or the Temporary Receiver

23.     Plaintiff CFTC has made a proper showing under 7 U.S.C. §13a-1(b) and they are not required to post any bond in connection with this Order.  The Temporary Receiver similarly is not required to post bond.

### XII.   Service of Order

24.     Copies of this Order may be served by any means, including via email or facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any records or assets of Defendants or that may be subject to any provision of this Order.

### XIII.   Service on the CFTC

25.     Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court for the Northern District of Texas and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the CFTC by delivering a copy to Carlin Metzger (cmetzger@cftc.gov), Sincere Belton (sbelton@cftc.gov), David Terrell (dterrell@cftc.gov), and Scott Williamson (swilliamson@cftc.gov), attorneys for the Commodity Futures Trading Commission, Ralph Metcalfe Federal Building, 77 W. Jackson Blvd., Suite 800, Chicago, Illinois 60604, by electronic filing, e-mail, personal delivery or courier service (such as Federal Express or United Parcel Service) and not by regular mail due to potential delay.

### XIV.   Hearing on Preliminary Injunction and Granting of Expedited Discovery

26.     A hearing shall be held to determine whether the ex parte temporary SRO entered by the court should be converted into a preliminary injunction enjoining Defendants during the course of this litigation.  Such hearing will be held before the United States District Court for the Northern District of Texas in that branch thereof presided over by Judge Sam A. Lindsay in his courtroom in the U.S. Federal Building and Courthouse, 1100 Commerce Street, Dallas, Texas 75242, at Room 1546 on Tuesday, **October 3, 2023, at 2 p.m.**  Mr. Moran may represent himself in this matter if he chooses to do so; however, the business entity Defendants must retain and be represented by counsel.  Any motion by Plaintiff for a preliminary injunction must be filed by Wednesday, **September 27, 2023, at 12:00 p.m.**  Any response by Defendants must be filed by Friday, **September 29, 2023, by 5:00 p.m.**  Any reply by Plaintiff must be filed by Monday, **October 2, 2023, at 12:00 p.m.**  To facilitate the resolution of any such motion, all briefing by the parties must comply with this District's Local Civil Rules, including Local Rule 7.2. All briefs must be supported by citations to applicable legal authority and evidence and **must not exceed 25 pages**, exclusive of cover and signature pages, and pages for table of contents and table of authorities.

XV.    **Force and Effect**

This Order shall expire on October 4, 2023, unless extended by the court for good cause shown for a like period of time, or Defendants consent to a longer extension. The court retains jurisdiction for purposes of enforcing this Order during the course of this litigation.

**It is so ordered** this 20th day of September, 2023, at 10:05 a.m.

Sam A. Lindsay
United States District Judge